Bowen v. Darby.

the motion, so far as they are considered by the court, are stated in the opinion.

*McDonnell & Finley* for Appellants.

*J. B. Dawkins* for Respondents.

WYLDE L. L. BOWEN vs. JOHN DARBY.

1. When a record returned on appeal contains in narrative form what purport to be the proceedings of the court on the trial, the instruction of the Judge to the jury, a motion for new trial, the order of the court denying the motion, exceptions thereto, and exceptions to the ruling of the court upon receiving or rejecting testimony embodied in the statement of the testimony, all in the usual form of a case and exceptions, and all finally signed by the judge, it will be presumed that the case was regularly settled and the exceptions signed in pursuance of the rules of the court, unless the contrary appears by the return.

Bowen v. Darby.

2. Where the payee or holder of a note by a valid contract with the principal debtor agrees to give further time of payment beyond the time mentioned in the note, without the consent of the surety upon the note, such agreement will release the surety. And where the surety signs the note as a joint principal, whether the fact that he is a surety be apparent upon the note or not, he may, under the present law of this State, in an action upon the note, show in his defence the agreement between the principal and the holder, entitling him to a discharge.

3. When a note was made payable in gold coin, and the court permitted evidence to be given by the plaintiff to show the value of gold coin in " greenback " currency at the time the note became due, and instructed the jury that they might find a verdict for such value with interest, and the jury found a verdict accordingly; *Held :* That such ruling and instruction was erroneous. The amount due in gold coin should be the rule of estimating the damages, and the verdict showing such amount due in gold coin should be followed by a judgment for such amount payable in coin.

Appeal from the Circuit Court for Columbia County, Third Judicial Circuit.

The action is upon a promissory note, which reads as follows :

" $3,000.        LAKE CITY, FLA., 5th March, 1867.

On the first of November next, we, or either of us, promise to pay W. L. L. Bowen, or his order, three thousand dollars in gold coin, for value received.

(Signed)              J. J. DICKINSON,
                      G. L. DENTON,
                      CHAS. E. HAILE,
                      H. V. SNELL,
                      J. DARBY,
                      E. L. HARRISON."

The summons notifies the defendant that unless he answers the complaint, &c., the plaintiff " will take judgment for the sum of three thousand dollars in coin, with interest."

The complaint demands judgment for " the sum of three thousand dollars in gold coin, with interest," &c.

The answer of the defendant states that the note was made by J. J. Dickinson as principal and the defendant as

an accommodation security, and that plaintiff, knowing th
fact, agreed with said Dickinson, in consideration of an i
creased rate of interest to be paid by said Dickinson, a
which he did pay, gave Dickinson additional time and i
dulgence on the note; that the sum of three hundred a
five dollars was paid by Dickinson to plaintiff as additio
interest under said agreement for further time, and that t
agreement was made without defendant's knowledge or c
sent, whereby the defendant insists that he was discharg
from his liability. The defendant further answers that s
Dickinson has made payments on said note to the amo
of two thousand seven hundred and sixty dollars and n
cents, including said amount paid for extra interest.

The cause was tried at the November term, 1871, bef
a jury.

On the trial, the plaintiff, W. L. L. Bowen, was sworn
his own behalf. The note sued on being introduced in
dence, " the plaintiff offered to prove what gold was wo
at the time the note became due," in order to ascertain
damages, claiming that that was the amount he was enti
to recover. The court, upon objection, ruled " that g
was now considered a commodity, and that the plaintiff
entitled to recover in currency the amount the gold
worth at that time, and admitted the evidence," wh
ruling was excepted to by counsel for defendant.

The witness then testified that gold was worth on the
of November, 1867, forty-one cents premium in New Y
in Savannah and other Southern cities, forty cents.

Some evidence was given upon the question whethe
increased rate of interest was agreed, between the plai
and Dickinson, to be paid by Dickinson, and afterw
actually paid to plaintiff in consideration of an extensi
the time of payment of the note ; and some evidence i
lation to a settlement between the parties and the givi
drafts in satisfaction of the note. Witness says he n
agreed with Dickinson to suspend his right of action ag

Bowen v. Darby.

ny of the parties. The witness testified that the negotia-
ion for the loan of the money, which was the consideration
f the note, was with Gen. Dickinson. " I told him I would
oan money on a note made by five or six as good men as
ould be found in the State. He afterwards presented me
he note now in suit, and I accepted it as satisfactory. I
aid him $3,750 in currency for the note, which included
he premium on the gold and interest up to Nov. 1, 1867,
when the note fell due."

On the part of the defendant, J. J. Dickinson testified
hat he negotiated with the plaintiff for the loan and had
he note executed in pursuance of an agreement. Ques-
ion by defendant's counsel : " Did you sign said note as
orincipal debtor and procure the other signatures to the
ame as accommodation sureties in pursuance of said agree-
ment ?" The court ruled out the question, and the defen-
lant excepted to the ruling. Receipts, &c., were produced,
igned by the plaintiff, which appear to be for money paid
on account of the note as follows : Receipt dated Jan'y 1,
870, $167.79 ; draft Sept. 24, 1869, $133.00 ; receipt Jan.
5, 1870, $716.54 ; receipt Jan. 5, 1870, $124.25 ; Sept. 24,
869, $317.22 ; Jan. 26, 1869, $178.24.

An account of J. J. Dickinson against plaintiff for goods,
&c., amounting to $350.08, was put in evidence, " date
greed upon, Nov. 12, 1870." A note of Dickinson to plain-
iff for $195 in gold coin was offered in evidence, and Dick-
nson testifies that he paid this note to plaintiff in gold, as
extra interest for indulgence of time on the note in suit, to
the best of his recollection. Defendant's counsel asked,.
' was the present defendant a party to such indulgence, or
was it done without his consent ?" Question ruled out and
lefendant excepts. The note of $195 was excluded by the
court and defendant excepts to the ruling of the court.
Witness further states that the proposition for indulgence
of time on the note in suit was made in the same month
that the note was due. No other person was present. Of

the receipt for $716.54, dated Jan. 5, 1870, $110 is for extra interest.

The court charged the jury among other things, 1. " That the note is a joint note and all are principals, and that parol evidence cannot be received to show that any of the parties are security, and that no agreement to extend the time of payment will release or exonerate the parties to this note."

2. "Gold is now treated as a commodity, and you will give the plaintiff the amount in currency that gold was worth at the time the note became due, as stated in the testimony."

3. " All that the defendant could ask would be that the amount paid as extra interest should be applied upon the note, then and there agreeing to pay the remainder."

4. " The court charges you that you will give the defendant credit for all the credits proved or offered, except the gold note, which has been ruled out by the court."

A verdict was returned in favor of the plaintiff, assessing the damages at $3,286.61, for which judgment was entered.

The defendant's counsel moved for a new trial upon the following grounds :

1. That the verdict is contrary to evidence.

2. The court erred in charging the jury that parol evidence could not be given to show that any of the parties to the note in suit had signed the same as securities.

3. The court erred in his charge in relation to the rights of equitable defence, &c.

4. In the third clause of his charge.

5. In charging that the value of gold should be estimated in U. S. currency at the time of the note falling due, which motion was denied and the defendant excepted to the decision.

The defendant appealed and assigns as errors the various grounds stated in the motion for a new trial, and the decision of the court in its rulings upon the admission of evidence to which he had excepted.

*Finley* and *Hagan* for Respondent.

Bowen sued Darby in the Circuit Court for Columbia county, as one of the makers of a joint and several promissory note payable in gold coin ; the action being in the usual form, of summons and complaint for money only.

1. The allegation of misrepresentation in the answer is no defence as pleaded, because it does not state that the misrepresentation was made by the plaintiff, and even if it did, there was no attempt made to sustain the allegation by proof. See evidence in the record.

2. Darby was a joint and several maker of the note sued on, and nothing appears on its face to show that he signed it as surety.

In a joint and several note, all the makers are principals, and as against the creditor, evidence is not admissible to show that some are sureties. Byles on Bills, marg. p. 192, and note (i) ; 2 Kent. Com., 556.

A joint and several maker of a note, where his character as surety does not appear on the face of the instrument, will not, in an action by the holder, be allowed to prove that he is a surety merely. 2 Kent. Com., 556 ; 2 Phill. Ev., 350 ; 12 Wend., 573 ; Byles on Bills, marg. p. 192 and note, (i.)

The general rule is, that parol evidence is not admissible to contradict or vary the terms of a written contract which is intelligible in its terms, nor to impose upon it a sense which its terms do not imply. 2 Kent. Com. 556, (marg. ;) 9 Fla., 503 ; 2 Abbott's Nat. Dig., 339, No. 593, and the cases there cited.

By the terms of the note upon which the action is founded, the defendant is a maker and not a surety, and if parol evidence should be admitted to show that he was in fact a mere surety, would be to impose upon the note, which is a written contract, a sense which its terms do not imply ; and would be a clear violation of the rule.

It is therefore contended, that the court below did not err,

in refusing to allow the defendant to prove by parol that he was a mere surety and not a maker of the note.

If I am correct in this, and the defendant is not allowed to show that he is a surety and not a maker, it will be unnecessary to consider the question as to what indulgence will have the effect to discharge a surety or endorser.

But as the question is raised by the counsel for defendant, I submit to the consideration of the court the following propositions and authorities:

1. It is a settled rule of law that extending to principals further time for payment will not discharge the surety. Brightley's Fed. Dig., 824, Sec. 72.

2. Even a local statute authorizing a surety to require the creditor to sue, &c., does not apply to a case in which the principal and surety unite in a joint and several bond. Brightley's Fed. Dig., 825, Sec. 97, and cases there cited.

But a surety whose character appears on the face of the instrument, may call upon the creditor to proceed. Brightley's Fed. Dig., 823, Sec. 35 and cases there cited.

In England it is held that the *bona fide* holder of a bill or note cannot be prejudiced in his right, according to the terms of the instrument, by the knowledge that the acceptor or maker is surety, without a specific agreement to treat the acceptor or maker as surety. 3 Kent Com., 115, note 2; 18 Eng. L. and Eq., 351.

3. The indulgence which will discharge an indorser or surety, must not only be on a good consideration, but it must also be for a limited and definite period. Brightley's Fed. Dig., 824, Sec. 61.

In order to discharge the surety, the agreement of the holder must be to destroy or suspend, or else a contract to destroy or suspend his right of action against the maker. Byles on Bills, 193.

Mere indulgence or delay will not have the effect to discharge a surety. Byles on Bills, 193, and note.

But an agreement on good consideration not to sue the

maker at all, or not to sue within a specified time, will discharge an endorser or security. Byles on Bills, 194.

Now the proof in the record not only shows that the plaintiff made no agreement with Dickinson to destroy or suspend his right of action on the note against any or either of the makers thereof, but on the contrary establishes the fact in the most direct and positive terms, that the plaintiff did not at any time make any agreement with any one, by which he would be prevented from suing any or all of the makers of the said note for even a moment of time.

And hence it is argued that even if it were competent for the defendant to show (which we deny) that he is only a surety on the note, he has signally failed to prove upon the trial that the plaintiff ever gave such indulgence to Dickinson as would have the effect to discharge him. It is thereford contended that even if the court below erred in ruling out evidence to show that defendant was a surety, still this court will not reverse the judgment if the verdict is sustained by the evidence. 6 Fla., 482; ib. 516.

But it is contended by the counsel for defendant, that the court below erred in instructing the jury that in the event they should find in favor of the plaintiff, they should allow him the difference between gold coin and currency at the time the note became due, and the gold became payable.

The plain and settled rule of law which governs in all such cases is, that the engagement of the maker of a note is that it shall be paid at the time, and if it be not, the holder is entitled to indemnity for the loss arising from this breach of contract. 3 Kent's Com., marg. p. 115.

This general principle is the foundation of all claims for damages for breach of contract. And so if a note (like this) be made payable in gold coin at a given time, and it be not paid at that time, the holder of the note will be entitled to indemnity for the loss arising to him from the breach of contract, and the difference between gold coin and currency at that time will clearly be the correct measure of damages.

*J. M.* and *H. J. Baker* for Appellant.

It is a well settled principle, that if a creditor, by a valid agreement, without the assent of the surety, gives further time for payment of the debt to the principal, the surety is discharged, and it makes no difference whether the surety is damaged thereby or not. 1 Gilman, 419; 3 Metcalf, 255; 10 Peters, 258; 1 Story Eq. Jur., 319; 10 John., 587; 7 Page, 451; 11 Wend., 312; 6 Wend., 246.

When the creditor, by a valid agreement with the principal, varies the terms of the contract by enlarging the time of performance without the consent of the surety, the surety is discharged. 7 Munroe, 541; 1 M'Cord, 112 and 297; 1 Des., 315; 8 B. Munroe, 382.

When the creditor does any act impairing the rights of a surety, or varies the terms of the contract, or enlarges the time of performance, without consulting surety, the surety may set up and plead the same in discharge, either in law or equity. 13 John., 173–4; 17 ib., 390; 2 John. Ch., 554.

An indulgence to debtor, giving additional time, contrary to the terms of the original agreement, if done without his consent, discharges the surety. 18 Vesey, 20; 7 John., 332.

A note signed A, principal, and B, surety, is held to be a joint and several note. The only effect of writing the surety on note is to give notice to holder. In this case, plaintiff, by his testimony, shows he had notice. Story on Promissory Notes, § 69, note.

In a joint or several note, signed by two, on suit against the security by principal, proof may be received to prove the consideration, as well as the fact, that defendant signed as accommodation surety. 2 Fla., 136; 3 Fla., 135.

In the above cases, the able counsel engaged did not dispute the right to introduce evidence to show that Cotten, the joint maker of note in suit, was accommodation surety.

Parol evidence may be given to contradict a written, simple contract, or to show that the whole of it was not re-

duced to writing, but that there were conditions not contained in the written contract, when the action is between the original parties. 6 Mass., 430.

Parol evidence may be admitted to explain a written instrument. 8 Durnf. and East, 379; 1 East, 831; 2 ib., 240.

For the purpose of letting in evidence of the discharge of a surety, parol evidence that he signed as surety only is admissible. 21 Pick., 195.

Even in a deed or specialty, presumptions of law, in relation to matters of fact, may be repelled by parol testimony. 15 Mass., 85.

The fact that respondent signed the note in suit, with others, without adding the word "surety," might create a presumption at law that he was a principal. Under the above decision, parol evidence is admissible to repel that presumption.

If the right to make such defense at common law is doubted, that right would clearly exist under the Code, which abolishes all distinctions between actions at law and suits in equity. Code, Title 1, Sec. 49.

Under the head of Equitable Defenses are included all matters which would have authorized an application to the Court of Chancery for relief against legal liability, but which at law could not harm him pleaded in bar. 12 N. Y., 166.

In an action legal and equitable, claims for relief may be united. Defendant has nothing to do with the form of relief demanded. How., 269; 21 How., 296.

The note sued upon was payable in gold, which is money, the constitutional currency of the United States, a legal tender in payment of dues of all kinds, and not a commodity or merchandise. Const., Art. 1, Secs. 8 and 10; 1 U. S. Statutes at Large, 250, Act 1792, Sec. 16.

Plaintiff would have been bound, at date of trial, to receive gold in payment, if it had been tendered. Conse-

quently no proof of its value at any other date was admissible.

Gold coin being the standard of value in the United States, all other authorized currencies have a relative value, which may fluctuate in proportion to the confidence inspired in commercial circles or centres, but the value of gold coin is not disturbed by the fluctuation of other values.

Gold coin is not less valuable now than in 1867, but greenbacks are more valuable on account of the increased confidence in the credit on which they are based.

One hundred and ten dollars in greenbacks represented, on the day of the trial of this cause, as much as one hundred and forty dollars in 1867, when note became due.

The effect of the evidence permitted on trial, and the charge of the court, was to give twenty-seven dollars on each one hundred dollars due the plaintiff more than he was entitled to, under the contract, from any party to said note.

The only damage or penalty for non-payment of money due by note, is the payment of interest, which is fixed by law, or by contract in writing. 6 How., U. S., 154; 2 Fonblanque's Eq., 423.

Fixing rate of exchange, the rule is the rate at date of trial, not when claim becomes due. 8 Sergt. and Rawle, 48.

It appears from the evidence that a gold note for $195, given to plaintiff, and, after taken up by Dickinson, the principal, in $3,000 note, was offered as evidence of payment by defendant, and ruled out because it was shown that Dickinson had given same to plaintiff for further time.

The giving further time to principal without consent, being a fraud upon the defendant, he was entitled to discharge from all liability on said note.

If not discharged, he was entitled to credit for the entire amount paid by Dickinson to plaintiff. To refuse such credit would be to allow the plaintiff to take advantage of his own wrong, in taking from Dickinson the means, and diminishing his ability, to pay his debt.

The presiding Judge in the Circuit Court, having admitted improper testimony on part of plaintiff, having ruled out defendant's testimony, which should have been admitted, and improperly and erroneously charged the jury upon the law, the defendant was entitled to a new trial upon his motion entered upon the record, which motion was improperly refused.

RANDALL, C. J., delivered the opinion of the court.

Before submitting this cause, the counsel for respondent moved to dismiss the appeal upon the ground that a case or exception had not been made or notice thereof given to the respondent, or copy served, as required by the rules.

On examination of the record, it appears to be made up in the usual form of a case and exceptions, containing the proceedings, including exceptions taken upon the trial, the instructions of the Judge to the jury, the verdict and final judgment, the motion for a new trial and the order denying the motion, signed by the Judge, and exceptions thereto also signed by him, all in consecutive order and in the appropriate form of a case and exceptions duly settled and signed. It is true that it does not affirmatively appear that a copy of the case was served before being settled and signed by the Judge, by any express recital of the fact, but it must be presumed when a case and exceptions in proper form, duly signed by the Judge, appear in the record, that it was regularly done. We can presume nothing going to impeach the regularity of the action of the Judge or court.

Any irregularity in the making up of the record or judgment roll must be corrected in the court where it is made, unless the defect be such that the correction may be made upon a suggestion of diminution of the record. We must consider it as we find it, and if it be imperfect the parties may employ an appropriate remedy. We have, therefore, declined to grant the motion to dismiss the appeal. See

Hunt vs. Bloomber, 12 How. Pr. Rep., 567; 3 Kernan, 341.

The first point made by the appellant's counsel is that the court erred in rejecting testimony offered by defendant to prove that the defendant was a surety of Dickinson, and in charging the jury that such testimony was not to be received to prove such fact, and that no agreement to extend the time of payment will release or exonerate any of the parties to this note.

It is the settled law that where a payee or holder of a note or obligation, by a valid agreement, binding as between him and a principal debtor, agrees to give time for payment beyond the time stipulated in the original contract, without the consent of a surety of the principal, such agreement will release the surety. And a court of law as well as equity gives the same effect to the extension of time by the creditor to the principal, and holds the surety discharged. This principle is not controverted by counsel in this case. To enable a surety to avail himself of this defence at law, the instrument must on the face of it show that he is such surety; if he is bound as principal, he cannot *at law* aver by pleading that he he is bound as surety, though *in equity* parol evidence is admissible to show who is principal and who surety. Burge on Suretyship, 211; Rees vs. Berrington, 2 Ves., Jr., 540; 14 Ves., 160.

The case of Sprigg vs. the Bank of Mount Pleasant, in the Supreme Court of the United States, (10 Peters, 257,) was a suit upon a bond executed by several persons, in which they were all expressly named as principals. The action was at law. The court (Thompson, J.,) says: " If the defendant can be let in to set up that he was surety only, the matter alleged is sufficient to exonerate him from liability in the present suit. It falls within the settled rule of law in relation to sureties, that extending to the principal further time of payment by a new agreement, will discharge the surety. It has been contended that it appearing ex-

pressly on the face of the bond that the defendant acknowledged himself as principal, did not vary the question; for that all joint and several obligors in a bond are in judgment of law considered principal. This is true as a *prima facie* presumption of law; but is not conclusive upon a party when drawn in question before a proper tribunal. But as matter of estoppel at law, it may stand on a different footing, and is, at all events, as matter of fact more conclusive. * * That a party has, by his own voluntary act, placed himself in a situation, as to mere matter of fact, that he is precluded from denying it; * * and it is a salutary practical rule that a man shall not be permitted to deny what he has solemnly acknowledged. In ordinary cases, when sureties sign an instrument without any designation of the character in which they become bound, it may be reasonable to conclude that they understood their liability was conditional, and attached only in default of payment by the principal. And hence the reasonableness of the rule of law which requires of the creditor that his conduct, with respect to his debtor, should be such as not to enlarge the liability of the surety and make him responsible beyond what he understood he had bound himself. * * But admitting that, although the defendant has upon face of the obligation become bound as principal, yet a court of equity might allow him to set up that he was surety only, and let him in to all the protections that are usually extended to sureties, the present case is to be governed by rules applicable to proceedings in courts of law."

It thus appears by the very highest authorities in this country and in England, that the defence referred to may be made in an action at law, where the fact that the defendant was a surety is admitted or appears upon the face of the contract; but where the contract discloses the fact that all the makers are principals, the defence can only be made, or the relief had in a court of equity, wherever the distinction be-

tween the proceedings in courts of law and those in courts of
equity exists.

But the Code of Procedure of this State has abolished all
distinctions in the forms of action between legal and equita-
ble remedies, and section 101 of the Code allows the defen-
dant to set forth by answer as many defences and counter
claims as he may have, whether they be such as have been
heretofore denominated legal or equitable, or both.   So that
it was competent for the defendant to avail himself of the
defence that he was a surety in fact, and that he had been
discharged by the happening of any circumstance which
would have availed him in a court of equity under the for-
former practice.   The court therefore erred in excluding the
evidence sought to be given by the defendant, and in in-
structing the jury that such defence would not avail him.

The remaining question in this case is whether the plain-
tiff is entitled to recover the " currency" value of the gold
coin, the value to be ascertained at the time the note became
due, with interest.   The note in suit became due November
1, 1867, and the proof shows that the difference in the value
of gold and " currency" was about forty cents on the dollar.
A computation of the amount due, upon this basis, allowing
credit for the various payments shown by the receipts,
demonstrates that the jury ascertained the amount by this
rule, and found their verdict accordingly, being about forty
per cent. more than the amount actually due in coin.

It has been suggested that gold coin is a merchantable
commodity and that the standard of value now in this coun-
try is United States currency or " greenbacks," and whereas
$100 in gold coin was in 1867 " worth" $140 in currency,
and the difference now being 10 or 12 only, that therefore
gold has fallen or depreciated.   We think this is a mistake.
Gold coin represents value as a standard; " currency" rep-
resents credit or confidence.   The paper promises of a gov-
ernment or an individual are the representatives of the credit
of the government or person.   The ability and disposition

to pay fixes the value to be estimated in money. It would be absurd to say that the paper promises issued by a person or a bank formed the basis of the value of gold, and it is equally absurd to apply the doctrine to the paper of the government.

In the present case, had the maker of this note tendered, at the last moment, the amount due on its face in gold coin with interest, it would have been a satisfaction, because it would have been a compliance with the promise just as fully as a tender of currency after the time of payment had arrived would be a compliance with a promise to pay currency.

The judgment to be rendered should be a judgment enforcing the contract. The summons in this case notifies the defendant that the plaintiff, on failure to answer, will take judgment for $3,000 in gold coin, with interest. The complaint demands judgment for "$3,000 in gold coin, with interest." Thus the summons and complaint demand a specific fulfilment with the terms of the note, and this is perfectly legitimate. The judgment is for an amount in dollars forty per cent. greater than the amount demanded in dollars by the plaintiff.

The Supreme Court of the United States, in three late cases, has indicated the proper judgment to be given upon such contracts. In Bronson vs. Rhodes, 7 Wallace, 254, the court says: "When contracts made payable in coin are sued upon, judgments may be entered for coined dollars and parts of dollars; and when contracts have been made payable in dollars generally, without specifying in what description of currency payment is to be made, judgment may be entered generally without such specification. We have already adopted this rule as to judgments for duties, by affirming a judgment of the Circuit Court for the District of California in favor of the United States for $1,388.10, payable in gold and silver coin, and judgment for express contracts between

individuals for the payment of coin may be entered in like manner." This is the judgment of the same court in 3 Wallace, 320; Butler vs. Horwitz, 7 Wallace, 258; Dewry vs. Sears, 11 Wallace, 379. While this is the rule in the courts of the United States in common law actions, there is perhaps less doubt as to the propriety of entering a specific judgment following the terms of the contract, under our present Code of Procedure. We are therefore of the opinion that the ruling of the court in admitting testimony to show the "value of gold" at the time the note became due, and in directing the jury to compute the amount due in "currency" upon that basis, was incorrect.

The judgment must, for the reasons herein stated, be reversed, and a new trial granted, with costs against the respondent.